**HB**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**FILED**

MAY 10 2013

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

---

| | |
|---|---|
| ROBERT STROUGO, Individually and On Behalf of All Others Similarly Situated, ) ) | **Civil Action No.** |
| Plaintiff, ) ) | **13   2580** |
| v. ) ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| UNITEK GLOBAL SERVICES, INC., C. SCOTT HISEY, ROCCO ROMANELLA, RONALD J. LEJMAN, MICHAEL HAYFORD and KEVIN MCCLELLAND, ) ) ) ) ) | |
| Defendants. ) ) | **JURY TRIAL DEMANDED** |

Plaintiff Robert Strougo ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against UniTek Global Services, Inc. ("UniTek" or the "Company"), C. Scott Hisey ("Hisey"), Rocco Romanella ("Romanella"), Ronald J. Lejman ("Lejman"), Michael Hayford ("Hayford") and Kevin McClelland ("McClelland"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by UniTek with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants; (c) review of news articles, shareholder communications, conference call transcripts and postings on UniTek's website concerning the Company's public statements; and (d) review of other publicly available information concerning UniTek and the Individual Defendants (as defined below).

## I.   NATURE OF THE ACTION

1.      This is a federal securities class action against UniTek and certain of its officers and/or directors brought on behalf of all persons or entities who purchased or otherwise acquired



shares of UniTek securities between May 18, 2011 and April 12, 2013, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The Exchange Act claims allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price. As a result of the fraud described below, the Company has lost a substantial portion of its value.

2.      Defendant UniTek is a provider of engineering, construction management and installation fulfillment services to companies specializing in the telecommunications, broadband cable, wireless, two-way radio, transportation, public safety and satellite industries in the United States and Canada. The Company's services include: network engineering and design; construction and project management; comprehensive installation and fulfillment; wireless telecommunication infrastructure services; and wireless system integration for public safety and land mobile radio applications. UniTek operates in two segments: Fulfillment, and Engineering and Construction. UniTek is headquartered in Blue Bell, Pennsylvania and the Company's shares are traded as common stock under the symbol "UNTK" on the NASDAQ

3.      Plaintiff alleges that Defendants have fraudulently inflated UniTek's stock price during the Class Period by disseminating materially false and misleading statements, and failing to disclose material information, concerning the Company's true financial condition and business prospects.

4.      Specifically, throughout the Class Period, defendants disseminated false and misleading statements and failed to disclose that: (a) the Company's financial statements during the Class Period did not provide a fair presentation of the Company's finances and operations; (b) the Company's subsidiary, Pinnacle Wireless, engaged in fraudulent activities that resulted in improper revenue recognition; (c) the Company's internal accounting controls were deficient and

permitted the improper recognition of revenue; and (d) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times. As a result of defendants' false statements, UniTek's stock traded at artificially inflated prices during the Class Period, reaching a Class Period high of $8.95 per share on May 27, 2011.

5.       On April 12, 2013, UniTek issued a press release in which it made several stunning announcements. First, the Company disclosed that it would be restating previously issued financial statements for the interim periods ended March 31, 2012, June 30, 2012 and September 29, 2012, as well as for the fiscal year ended December 31, 2011 and the interim period ended October 1, 2011. Additionally, the filing of the Company's Annual Report on Form 10-K for the year ended December 31, 2012 would be further delayed. Second, the company announced that it had terminated Ronald J. Lejman, its CFO and Treasurer, Michael Hayford, President of the Pinnacle Wireless Division, Kevin McClelland, Controller and Chief Accounting Officer, several other employees of Pinnacle Wireless, and an employee of the UniTek finance department. Notably, none of the terminated individuals would receive severance. Third, the Company disclosed that as a result of an ongoing internal investigation conducted by the Audit Committee of the Company's Board of Directors, with the assistance of outside independent counsel and a forensic accounting firm, it was determined that several employees of the Company's Pinnacle Wireless subsidiary engaged in fraudulent activities that resulted in improper revenue recognition.

6.       On April 17, 2013, the Company announced that it had received a letter from NASDAQ stating that the Company is not in compliance with NASDAQ Listing Rule 5250(c)(1) because UniTek has not timely filed its Annual Report on Form 10-K for the year ended

December 31, 2012. The Company would be given until May 1, 2013 to submit a plan to regain compliance.

7.      Defendants' failure to timely disclose these problems during the Class Period rendered Defendants' statements concerning the Company's financial condition materially false and misleading. UniTek's announcements caused the Company's stock price to plummet $1.49 from its prior trading day close of $3.01 to close on April 15, 2013 at $1.52—a stunning decline of approximately 50% on unusually heavy trading volume.

8.      Defendants' wrongful acts and false and misleading statements and omissions have caused a precipitous decline in the market value of the Company's stock. Plaintiff and other Class members have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

9.      This action arises under Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b 5].

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). UniTek maintains its principal executive offices at 1777 Sentry Parkway West, Gwynedd Hall Suite 202, Blue Bell, Pennsylvania, 19422. Many of the acts and conduct complained of herein, including the presentation and dissemination of materially false and misleading information to the investing public, occurred in substantial part in this district.

12.      In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III   THE PARTIES

13.     Plaintiff, Robert Strougo, as set forth in the accompanying certification and incorporated by reference herein, purchased the publicly traded UniTek securities at artificially inflated prices during the Class Period and has been damaged thereby.

14.     Defendant UniTek provides permanently-outsourced infrastructure and technical services to the wireless and wireline telecommunications, satellite television and broadband cable industries in the United States and Canada.

15.     Defendant C. Scott Hisey served as Chief Executive Officer ("CEO") and Director of UniTek from January 2010 until January 2012. Hisey currently acts as a consultant for the Company.

16.     Defendant Rocco Romanella has served as Chief Executive Officer ("CEO") and Director at UniTek since July 2012.

17.     Defendant Ronald J. Lejman has served as Chief Financial Officer ("CFO") and Treasurer at UniTek since January 2010. From January 2012 until his termination, Lejman served as Co-Manager of the Interim Office of the CEO. Defendant Lejman was terminated by the Company on April 12, 2013.

18.     Defendant Kevin McClelland served as Controller and Chief Accounting Officer at UniTek since February 2012. Defendant was terminated by the Company on April 12, 2013.

19.     Defendant Michael Hayford has served as President of the Pinnacle Wireless Division, a subsidiary of the Company since 2011. Defendant Hayford was terminated by the Company on April 12, 2013.

20.     Defendants Hisey, Romanella, Lejman, McClelland and Hayford are collectively referred to herein as the "Individual Defendants."

21.     UniTek and the Individual Defendants are referred to herein as "Defendants."

22.     During the Class Period, the Individual Defendants, as senior executive officers of UniTek, were privy to confidential, proprietary and material adverse non-public information concerning UniTek, its operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

23.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of UniTek's business.

24.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and, through such analysts, to the investing public. The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

6

25.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to UniTek's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of UniTek's securities would be based on truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

26.     The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of UniTek's publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

IV.     **SUBSTANTIVE ALLEGATIONS**

   A.     **Company Background**

27.     UniTek is a provider of specialized infrastructure services including engineering, construction management and installation fulfillment services to the wireline and wireless telecommunications, public safety, broadband cable and satellite industries. UniTek has created a scalable platform through which it can rapidly deploy a highly skilled workforce across the United States and Canada, delivering a comprehensive end-to-end suite of permanently outsourced infrastructure services. The Company operates in two reportable segments: (1) Fulfillment, which performs installation and other services for the satellite and broadband cable pay-television industry; and (2) Engineering and Construction, which performs engineering and

construction services on wired and wireless telecommunications networks. UniTek was founded in 1987 and is headquartered in Blue Bell, Pennsylvania.

28.     In April 2011, UniTek announced that it had closed acquisition of Pinnacle Wireless, a two-way radio and wireless communications systems integrator specializing in large scale communications projects for the transportation, public safety, entertainment, hospitality and enterprise-level commercial real estate industries.

29.     In December 2012, UniTek announced that Pinnacle Wireless would be a new brand identity which would combine the strengths of UniTek's national presence and shared services platform with its own diverse technology solutions, including the ability to deliver "end to end" wireless solutions and services.

30.     During the Class Period, Defendants made false and misleading statements and failed to disclose that the Company's subsidiary, Pinnacle Wireless, engaged in fraudulent activities that resulted in improper revenue recognition. In addition, the Company failed to disclose material weaknesses in its internal controls to detect or prevent misstatements in its financial statements.

## B.     Defendants' False and Misleading Statements

31.     In regular press releases, conference calls and filings with the SEC, UniTek and the Individual Defendants repeatedly made false and misleading statements and omissions concerning the Company's: (i) financial results; (ii) accounting practices; and (iii) internal controls. These false and misleading statements created the false impression that UniTek was meeting target revenue, profit margin percentages and other financial metrics, while artificially inflating the Company's stock price.

32.     Defendants certified the design and reliability of the Company's internal controls, the accuracy of the Company's financial results during the Class Period and certified that the

8

Company had presented these results in compliance with GAAP. However, each of these statements was false and misleading due to UniTek' fraudulent activities that resulted in improper revenue recognition. As a result, the Company overstated important operational metrics such as revenue during the entirety of the Class Period.

33.    Throughout the Class Period, UniTek and the Defendants Hisey, Romanella and Lejman regularly made statements concerning the purported effectiveness and adequacy of UniTek's internal financial controls as defined in Rule 13a-15(f) or 15d-15(f) promulgated under the Exchange Act. In reality, however, the Company's internal controls were completely ineffective and/or deficient which enabled the revenue recognition misstatements to occur and not be prevented or detected on a timely basis.

34.    In the Company's Form 10-Q SEC filings during the Class Period, Defendants Hisey, Romanella and Lejman repeatedly made the following representations regarding the effectiveness of the Company's disclosure controls in substantially identical form. The Form 10-Q for the Quarterly Period ended July 2, 2011, filed on August 16, 2011 signed by Defendants Hisey and Lejman, evidences the certifications that Defendants Hisey, Romanella and Lejman made:

> **Item 4T. Controls and Procedures**
>
> Our management, with the participation of our Principal Executive Officer and Principal Financial Officer, *have evaluated the effectiveness of our disclosure controls and procedures* as defined in Rule 13a-15(e) and 15(d)-15(e) of the Exchange Act. Based upon that evaluation, such officers have concluded that our disclosure controls and procedures were effective, as of the end of the period covered by this report, to provide reasonable assurance that the information required to be disclosed by us in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that information required to be disclosed by us in the reports we file or submit under the Exchange Act, is accumulated and communicated to our management, including our principal executive and

financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

### *Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 or 15d-15 that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

From the 9/29/12 10-Q filed on November 8, 2012 signed by Defendants Romanella and Lejman:

### Item 4. Controls and Procedures

Our management, with the participation of our Principal Executive Officer and Principal Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15(e) and 15(d)-15(e) of the Exchange Act. ***Based upon that evaluation, such officers have concluded that our disclosure controls and procedures were effective***, as of the end of the period covered by this report, to provide reasonable assurance that the information required to be disclosed by us in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified in the Security and Exchange Commission's rules and forms, and that information required to be disclosed by us in the reports we file or submit under the Exchange Act, is accumulated and communicated to our management, including our Principal Executive and Financial Officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

### *Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 or 15d-15 that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

35.     Throughout the Class Period, Defendants Hisey, Romanella and Lejman each signed internal control certifications on Form 10-Qs filed with the SEC, affirming that they were responsible for designing "such internal control over financial reporting, or caused [had] such internal control over financial reporting to be designed under [their] supervision, to provide

reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles," and that they had reported to the board and auditors "[a]ll significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information."

36.    The preceding statements were false and misleading at the time they were made because, throughout the Class Period, UniTek' internal controls suffered from significant deficiencies, including the following:

(a)    On April 12, 2013, UniTek admitted the Company suffered from "underlying internal control deficiencies that enabled the revenue recognition misstatements to occur and not be prevented or detected on a timely basis," and as a result, its financial results for the interim periods ended March 31, 2012, June 30, 2012 and September 29, 2012, the interim period ended October 1, 2011 and the fiscal year ended December 31, 2011 would be restated.

(b)    UniTek disclosed that as a result of an ongoing internal investigation conducted by the Audit Committee of the Company's Board of Directors, with the assistance of outside independent counsel and a forensic accounting firm, it was determined that several employees of the Company's Pinnacle Wireless subsidiary engaged in fraudulent activities that resulted in improper revenue recognition.

(c)    Unitek failed to file its Annual Report on Form 10-K for the year ended December 31, 2012. As a result, NASDAQ sent a letter stating that the Company was not in compliance with NASDAQ Listing Rule 5250 (c)(1). The Company has until May 1, 2013 to submit a plan to regain compliance.

37.    Accordingly, Defendants' statements during the Class Period that UniTek maintained effective internal controls over financial reporting was patently false and materially misleading when made. On the contrary, as discussed above, the Company suffered from

11

material deficiencies in its internal controls, which allowed Defendants' fraudulent accounting scheme to occur in the first place and continue unabated for several quarters.

38.     Throughout the Class Period, the Company and the Individual Defendants regularly made statements concerning the state and expectation of UniTek's finances and operations. Because Defendants' fraudulent accounting scheme artificially inflated the Company's financials, Defendants reported false financial results and made false assurances concerning such metrics. The Company's false financial results and Defendants' false assurances concerning the Company's operations and finances are presented below.

39.     On May 17, 2011, UniTek issued a press release reporting on earnings for the first quarter of 2011. The press release stated in pertinent part the following:

> For the quarter ended April 2, 2011, revenue increased 5% to $91.8 million, compared with $87.8 million in the first quarter of 2010.
>
> Adjusted EBITDA for the quarter ended April 2, 2011 increased 9% to $6.0 million, compared to adjusted EBITDA of $5.5 million for the comparable period in 2010. Net loss for the quarter ended April 2, 2011 improved by $0.5 million, or 6%, to ($7.9) million compared to a loss of ($8.4) million for the quarter ended April 3, 2010.
>
> C. Scott Hisey, UniTek's Chief Executive Officer, commented, "We delivered 9% year-over-year EBITDA growth, despite a challenging first quarter due to the unusually harsh weather in multiple regions. We continue to grow and execute our backlog and believe we remain poised for strong growth in our key Engineering and Construction markets for the remainder of the year. Additionally, we continue to see strong bid activity for fiber projects and expect continued consolidation trends in our Fulfillment business."
>
> Mr. Hisey added, "The integration of the Pinnacle acquisition is progressing. ***The combination of our two companies is providing great business development opportunities*** in the public safety wireless sector, evidenced by our recent $37 million project award at the World Trade Center Transportation Hub. This early success is a testament to our ability to integrate acquisitions effectively by leveraging the UniTek platform and resources. In addition, early in the second quarter, we further improved our financial position through the refinancing of our debt facility, reducing

our interest obligations and giving us greater liquidity and flexibility to carry out our organic growth and acquisition strategy."

40.     On August 16, 2011, UniTek issued a press release reporting on earnings for the second quarter of 2011. The Press Release stated in pertinent part the following:

> For the quarter ended July 2, 2011, revenue increased 2% to $106.4 million, compared with $104.2 million in the second quarter of 2010.

> Adjusted EBITDA for the second quarter of 2011 increased 26% to $10.0 million, compared with adjusted EBITDA of $7.9 million for the second quarter of 2010.

> Net loss increased by 4.9% from $(6.1) million for the second quarter of 2010 to $(6.4) million for the second quarter of 2011, including a $3.5 million non-cash loss related to the extinguishment of debt in April 2011.

> C. Scott Hisey, UniTek's Chief Executive Officer, commented, "We are very pleased with our results for the second quarter. We have achieved significant margin improvement while executing our primary strategic and operational objectives, including the debt refinance, repositioning our wireless business to focus on high quality deployments with major carriers and reconstituting our backlog with high-margin, recurring revenue projects, and are on pace to grow our full-year adjusted EBITDA 47% over 2010, with a 10% EBITDA margin.   During the quarter, we completed a major milestone with the integration of the Pinnacle Wireless business, which we believe positions the Company for longer term growth in the public safety and specialty wireless markets.

> "Our fulfillment segment generated top-line growth and meaningful margin improvement, which is a testament to our operational capabilities and leadership position within the space. Our backlog and pipeline for new business in each of our operating segments remain strong, and we will continue to execute a focused growth strategy that combines organic growth with targeted acquisitions."

> Mr. Hisey concluded, "We are fortunate to have positioned UniTek as a leader in industries that we expect to have significant capital expenditure for the foreseeable future as carriers ramp capacity to meet growing consumer demand. This is a strong complement to our fulfillment business, which has several important catalysts including vendor consolidation. ***Today, we believe that UniTek is positioned to continue to win new business and carry out our growth strategy. We are executing ahead of plan on EBITDA margin, and have better positioned the Company for success in 2012 and beyond***. We believe that UniTek is primed to deliver strong revenue growth, margin expansion and EBITDA

13

performance, with an ultimate goal of creating substantial long term shareholder value."

41.     On November 15, 2011, UniTek issued a press release reporting on earnings for

the third quarter of 2011. The Press Release stated in pertinent part the following:

> For the quarter ended October 1, 2011, revenue increased 10% to $120.9 million, compared with $109.5 million in the third quarter of 2010.
>
> Adjusted EBITDA for the third quarter of 2011 increased 47% to $14.1 million, compared with adjusted EBITDA of $9.5 million for the third quarter of 2010.
>
> Net income (loss) improved by $6.3 million to $2.4 million, from a net loss of $(3.9) million for the third quarter of 2010.
>
> C. Scott Hisey, UniTek's Chief Executive Officer, commented, "This was a tremendous quarter for UniTek. We achieved record revenue, net income and adjusted EBITDA thanks to continued execution in our core markets. Our third quarter results and full-year expectations demonstrate UniTek's ability to effectively leverage our industry-leading technology and services platform. We continue to improve our margins as we execute our growth and diversification strategy, and expect to meet our full-year guidance.
>
> "We are benefitting from vendor consolidation in our fulfillment segment. We are emphasizing our best-in-class PROS technology platform, top-ranking customer satisfaction scores and ability to consistently generate results that exceed operator requirements as we grow our national footprint. During the quarter, we grew our broadband cable technician base by over 20% from the third quarter of 2010, and we are excited about the future growth prospects for this segment."
>
> Mr. Hisey added, "The results in our E&C segment were strong, but we have not yet begun to realize the full long-term value of our wireless growth strategy. *We have a solid foundation in place, focused on continued technology advancement, which we believe will enable UniTek to emerge as a leader in this fast-growing market. We are focused on long-term, primary-vendor projects, and expect this strategy to begin driving substantial revenue growth and margin expansion in 2012.* We are pursuing a number of sizeable carrier contracts that we positioned UniTek for earlier in the year. In addition, our public safety and specialty wireless business segment continues to perform well as a value-added element of our business, and we believe it will become a significant growth driver for the Company in the future."

42.     On March 7, 2012, UniTek issued a press release reporting on earnings for the

fourth quarter and year end 2011. The press release stated in pertinent part the following:

> For the year ended December 31, 2011, revenue increased 8% to $432.3 million, compared to $398.9 million in 2010. Adjusted EBITDA increased 40% to $42.3 million in 2011, compared to Adjusted EBITDA of $30.2 million in 2010.
>
> Net loss improved by $15.0 million to ($15.6) million for the year ended December 31, 2011, which included a $3.6 million charge related to the Pinnacle earn-out, compared with a net loss of ($30.6) million for the year ended December 31, 2010. This $3.6 million Pinnacle earn-out charge was not additional purchase consideration or cash related to the contractual earn-out, but represented the accounting treatment for the change in fair value of the earn-out recognized in the Company's statement of operations.
>
> "2011 was an important year for UniTek, as we not only generated record revenue and EBITDA, but more importantly, were successful in positioning the Company for growth this year and in the future. We continue to expand our national footprint in cable and satellite fulfillment, while working to reposition our wireless business around large-scale, longer-term prime vendor contracts. We firmly believe our technology-centric business model and focus on exceeding customer expectations differentiates our service offerings to large wireless carriers developing 4G networks, and provides a strong foundation for further expanding these relationships as the year progresses. Additionally, we are particularly encouraged by the customer validation of our business model demonstrated through the continued growth of our backlog, which increased more than $130 million in 2011, with approximately $465 million of our backlog expected to be realized in 2012," said Ronald J. Lejman, Chief Financial Officer and Co-Manager of the interim Office of the CEO of UniTek Global Services.
>
> Mr. Lejman added, "In 2011, we successfully developed three growth opportunities in addition to our current wireless initiatives. We expect to continue to benefit from vendor consolidation in cable fulfillment, as we did in 2011 when we grew the business 13.5% year-over-year. *We believe our Pinnacle Wireless business is poised to grow in the public safety marketplace as we leverage the combination of industry-leading system integration capabilities with our nationwide footprint and shared services platform. UniTek's record of strong performance and solid relationships with cable providers should enable us to participate in expected network upgrades, as end-user demand for bandwidth necessitates investment in existing cable infrastructure.*"

15

43.     On May 9, 2012, UniTek issued a press release reporting on earnings for the first

quarter of 2012. The press release stated in pertinent part the following:

> First quarter 2012 revenue grew 19% to $108.2 million, compared to $91.1 million in the first quarter of 2011.
>
> First quarter 2012 adjusted EBITDA increased by 14% to $7.0 million, compared to adjusted EBITDA of $6.2 million in the first quarter of 2011.
>
> Net loss increased to $(9.8) million in the first quarter of 2012, compared with $(7.9) million in the first quarter of 2011. Net loss for the first quarter of 2012 improved by more than $2.0 million year-over-year, after adjusting for $4.3 million of first quarter charges related to previously announced management changes.
>
> "During the first quarter, we continued to execute on our key growth initiatives, while meeting both revenue and adjusted EBITDA guidance. *We believe the Company remains well positioned to meet its full-year objectives while continuing to build its business for future growth*," said Ronald J. Lejman, Chief Financial Officer and Co-Manager of the Interim Office of the CEO of UniTek Global Services. "*Our cable operations are currently on track for double-digit annual growth, as we grew this business 38% over the first quarter of last year. Our Engineering & Construction segment was also strong, delivering 41% revenue growth compared to the first quarter of last year. We continue to add 4G network development projects for multiple carriers, validating the decision to refocus our wireless business in the second half of 2011.*"
>
> Mr. Lejman added, "We pride ourselves on our ability to deliver organic growth through efficient execution, regularly exceeding customer expectations. We continue to build our backlog while delivering double-digit annual revenue growth. This is a testament to the people, systems and processes we have developed to support our customers."

44.     On August 8, 2012, UniTek reported strong second quarter results and even

reasserted guidance for record full year financial results. The press release, in pertinent part,

revealed the following information:

> "UniTek's strong second quarter performance and outlook for the year underscore the quality of our management team and the commitment to excellence throughout the organization," said Rocky Romanella, Chief Executive Officer of UniTek. "A balanced leadership team that is customer-focused, combined with a sound growth strategy, are important assets that set UniTek apart. We believe that continuing our focus on

operational efficiency, safety as a core value and expanding our business to capture growing market opportunities will be instrumental to our continued success."

Ronald J. Lejman, Chief Financial Officer of UniTek, added, "The second quarter results represent consistent revenue growth and even further improvements in profitability as we enter the seasonally strong second half of the year. We made investments in people, systems and processes in our wireless business during the first half of the year that support our expectations for substantive revenue and profitability growth in the second half of 2012. We increased our 12-month backlog by $18 million in the second quarter through the expansion of existing contracts and an incremental turf award from our largest wireless customer. *We are confident we will meet our objectives for the balance of 2012 and believe that we are well positioned for double digit growth in the years to come. Additionally, we remain focused on lowering our debt leverage ratios and improving our overall capital structure*.

\*       \*       \*

Revenue increased 14% to $223.8 million for the six months ended June 30, 2012, from $197.0 million for the six months ended July 2, 2011. *This increase in revenue resulted primarily from organic growth in our wireless business, the acquisition of Pinnacle Wireless and the growth in our cable business from market share gains and the acquisitions completed earlier in 2012*.

45.    On November 8, 2012, UniTek issued a press release reporting on earnings for the third quarter of 2012. The press release stated in pertinent part the following:

Revenues from continuing operations grew 30% to $132.1 million, compared to $101.9 million in the third quarter of 2011.

Adjusted EBITDA from continuing operations increased by 45% to $18.1 million, compared to $12.5 million in the third quarter of 2011.

Net income after certain non-cash adjustments for the third quarter of 2012 was $13.3 million, reflecting impairment costs from discontinued operations of $35.2 million, non-cash stock-based compensation of $1.0 million, non-cash interest expense of $0.5 million and non-cash amortization expense of $2.7 million.

"We are pleased with our recent accomplishments. Our continued strong financial performance resulted in adjusted EBITDA from continuing operations of $18.1 million for the third quarter, and we solidified two milestone events in our acquisition of Skylink and the planned sale of our

wireline assets. These transactions immediately strengthen our business and advance our strategy of becoming a fully integrated partner providing value-added services to the wireless and cable and satellite industries," said Rocky Romanella, Chief Executive Officer of UniTek. "*We are capturing incremental opportunities in the profitable wireless and fulfillment markets, where we continue to deploy resources and human capital in order to exceed customer and shareholder expectations. We are seeing significant benefits from the ongoing evolution of our businesses and we believe that we are making progress toward our objectives of sustainable and profitable growth and operational efficiency*."

## C. The Truth Comes to Light

46.     On April 12, 2013, UniTek issued a press release announcing the restatement of its financials in which the Company's previously-issued financial statements from the interim periods ended March 31, 2012, June 30, 2012 and September 29, 2012, the fiscal year ended December 31, 2011 and the interim period ended October 1, 2011 should no longer be relied upon. In addition, UniTek disclosed that as a result of an ongoing investigation conducted by the Audit Committee of the Company's Board of Directors, "it was determined that several employees of the Company's Pinnacle Wireless subsidiary engaged in fraudulent activities that resulted in improper revenue recognition." The press release provided in pertinent part the following:

> BLUE BELL, Pa., April 12, 2013 (GLOBE NEWSWIRE) -- UniTek Global Services, Inc. ("UniTek" or the "Company") (Nasdaq: UNTK), a premier provider of permanently outsourced infrastructure services to the telecommunications, broadband cable, wireless, transportation, public safety and satellite television industries, today announced estimated preliminary financial results for the year ended December 31, 2012.
>
> For the year ended December 31, 2012, UniTek estimated preliminary revenue of approximately $442.5 - $447.0 million, adjusted EBITDA of approximately $45.0 - $48.2 million and net loss of approximately $48.2 - $41.4 million. The estimated 12-month backlog as of December 31, 2012 totaled approximately $510 million.
>
> Restated Financial Results

*The Company also announced that it will restate its financial results for the interim periods ended March 31, 2012, June 30, 2012 and September 29, 2012, the fiscal year ended December 31, 2011 and the interim period ended October 1, 2011. As a result of an ongoing internal investigation being conducted by the Audit Committee of the Company's Board of Directors, with the assistance of outside independent counsel and a forensic accounting firm, it was determined that several employees of the Company's Pinnacle Wireless subsidiary engaged in fraudulent activities that resulted in improper revenue recognition.*

Since the Company's acquisition of the legacy Pinnacle business in April 2011, that business has comprised less than 10% of UniTek's consolidated revenues. The Company plans to amend its Quarterly Reports on Form 10-Q for the fiscal quarters ended March 31, 2012, June 30, 2012 and September 29, 2012 (the amended Form 10-Q for the quarter ended September 29, 2012 also will include restated consolidated financial statements for the comparative three and nine month periods ended October 1, 2011), as well as its Annual Report on Form 10- K for the year ended December 31, 2011. *In light of these events, the filing of the Company's Annual Report on Form 10-K for the year ended December 31, 2012 will be further delayed*. During the ongoing process of preparing restated financial statements, if it is determined that other adjustments are appropriate, the restated consolidated financial statements will reflect such adjustments.

Executive Update

*The Company also announced that Ronald J. Lejman, Chief Financial Officer and Treasurer, has been terminated, effective immediately. UniTek has engaged Kenneth J. Cichocki, CPA, of Pillar Solutions Group, to serve as the Company's interim Chief Financial Officer, effective April 15, 2013.*

In connection with the internal review and based on the recommendation of the Audit Committee, the Company also announced the termination of Kevin McClelland, Controller and Chief Accounting Officer, as well as the terminations of Michael Hayford, President of the Pinnacle Wireless division, several other employees of Pinnacle Wireless and an employee of the UniTek finance department. None of the terminated individuals will receive severance.

47.     Contrary to Defendants' previous assurances regarding the reliability of the Company's internal control over financial reporting, the Company was forced to acknowledge underlying internal control deficiencies that enabled the revenue recognition misstatements to occur and to not be prevented or detected on a timely basis. Accordingly, the Company announced that it would be required to restate its reported revenues for the full year 2011 and the first three quarters of 2012. On this news, UniTek's common stock plummeted $1.49 from its prior trading day close of $3.01 to close on April 15, 2013 at $1.52—a stunning decline of approximately 50% on unusually heavy trading volume.

## V.     NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49.     Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of UniTek who knew that those statements were false when made.

## VI.    UNDISCLOSED ADVERSE INFORMATION

50.     The market for UniTek' securities was an open, well-developed and efficient market at all relevant times. As a result of the materially false and misleading statements and failures to disclose described herein, UniTek securities traded at artificially inflated prices during

20

the Class Period.

51.     Plaintiff and the other members of the Class purchased or otherwise acquired UniTek securities relying upon the integrity of the market price of UniTek' securities and market information related to UniTek, and have been damaged thereby.

52.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of UniTek' securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Such statements and omissions were materially false and misleading in that they failed to disclose UniTek' fraudulent activities that resulted in improper revenue recognition and weak internal controls.

53.     At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about UniTek' business, prospects and operations.

54.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of UniTek and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.   SCIENTER ALLEGATIONS

55.     As alleged herein, the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company

during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

56.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding UniTek, their control over, receipt and/or modification of UniTek allegedly materially misleading statements and omissions, and positions with the Company which made them privy to confidential information concerning UniTek, participated in the fraudulent scheme alleged herein.

57.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## VIII.   LOSS CAUSATION

58.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of UniTek's securities and operated as a fraud or deceit on Class Period purchasers of UniTek's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of UniTek's securities fell as the prior inflation came out of the Company's stock price. As a result of their purchases of UniTek securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

59.    By failing to disclose the true state of the Company's business prospects and growth strategy, investors were not aware of the true state of the Company's financial status.

Therefore, Defendants presented a misleading picture of UniTek's business and prospects. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused UniTek to conceal the truth.

60.     The decline in the price of UniTek common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of UniTek's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of UniTek's securities and the subsequent decline in the value of UniTek's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

61.     At all relevant times, the market for UniTek stock was an efficient market for the following reasons, among others:

a.     UniTek securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b.     As a regulated issuer, UniTek filed periodic public reports with the SEC and the NASDAQ;

c.     UniTek securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of

these reports was publicly available and entered the public marketplace; and

d.    UniTek regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

62.    As a result, the market for UniTek securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in UniTek' stock price. Under these circumstances, all purchasers of UniTek securities during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

X.    **CLASS ACTION ALLEGATIONS**

63.    Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired UniTek securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of UniTek and members of their immediate families, any subsidiary or affiliate of UniTek, employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

64.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States. Throughout the Class Period, UniTek securities were actively traded on the NASDAQ, an open and efficient market, under the ticker symbol "UNTK". As of November 2, 2012, the Company had approximately 18.7 million

24

shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by UniTek and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

65.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

67.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.     whether Defendants participated in and pursued the common course of conduct complained of herein;

c.     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of UniTek;

d.     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of UniTek;

25

e.      whether the market price of UniTek common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

68.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## XI.   COUNTS UNDER THE EXCHANGE ACT

### COUNT I

**For Violations Of §10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants**

69.      Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

70.      During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of UniTek common stock; and (iii) cause Plaintiff and other members of the Class to purchase UniTek stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendants took the actions set forth herein.

71.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for UniTek securities in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. Individual Defendants are also sued herein as controlling persons of UniTek, as alleged herein.

72.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

73.     UniTek and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of UniTek as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts,

practices, and a course of conduct as alleged herein in an effort to assure investors of UniTek's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about UniTek and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of UniTek's securities during the Class Period.

74.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

75.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.

28

Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing UniTek' operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

76.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of UniTek securities was artificially inflated during the Class Period. In ignorance of the fact that the market price of UniTek shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired UniTek securities during the Class Period at artificially inflated high prices and were damaged thereby.

77.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of UniTek, which were not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise

acquired UniTek securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

78.     By virtue of the foregoing, UniTek and Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

79.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against the Individual Defendants

80.     Plaintiff repeats and realleges the allegations set forth above paragraphs as if set forth fully herein. This claim is asserted against the Individual Defendants.

81.     The Individual Defendants were and acted as controlling person of UniTek within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

30

82.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

83.     As set forth above, UniTek and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling position, Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.   **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b)     Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other relief as this Court deems appropriate.

## XIII.   **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 10, 2013

Respectfully Submitted,

By:_____

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Ira Neil Richards (Atty. PA No. 50879)
Kenneth I. Trujillo (Atty. PA No. 46520)
Gary M. Goldstein (Atty. PA No. 81255)
1717 Arch Street, Suite 3838
Philadelphia, PA 19103
Telephone: (215) 731-9004
Facsimile: (215) 731-9044

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS, LLP**
Marc I. Gross
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS, LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: (312) 377-1181
Fax: (312) 377-1184

**BRONSTEIN GEWIRTZ & GROSSMAN, LLP**
Peretz Bronstein
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296

*Counsel for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Robert Strougo, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against UniTek Global Services Inc., Inc. ("UniTek Global Services" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire UniTek securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired UniTek securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in UniTek securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except: *Strougo v. The Phoenix Companies, Inc., et al.*, 13 cv 0547 (DCT).

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____5/9/2013_____
                (Date)

_____
(Signature)

_____
(Type or Print Name)

**UNITEK GLOBAL SVCS, INC.**                    **Strougo, Robert**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 12/24/2012 | PUR | 861 | $3.5700 |
| 12/24/2012 | PUR | 239 | $3.5676 |

strougo